UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN SCHNARR,

      Plaintiff,                                   Case No. 16-13618

v.                                                Paul D. Borman
                                                    United States District Judge

COMMISSIONER OF                    David R. Grand
SOCIAL SECURITY,                    United States Magistrate Judge

      Defendant.
_____/

## OPINION AND ORDER (1) ADOPTING THE MAGISTRATE JUDGE'S NOVEMBER 28, 2017 REPORT AND RECOMMENDATION (ECF NO. 19), (2) OVERRULING PLAINTIFF'S OBJECTIONS (ECF NO. 20), (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 16), (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 18), AND (5) AFFIRMING THE FINDINGS OF THE COMMISSIONER

On November 28, 2017, Magistrate Judge David R. Grand issued a Report and Recommendation to Deny Plaintiff's Motion for Summary Judgment and Grant Defendant's Motion for Summary Judgment. (ECF No. 19, Report and Recommendation.) On December 12, 2017, Plaintiff filed Objections to the Report and Recommendation. (ECF No. 20.) Defendant filed a Response to Plaintiff's Objections. (ECF No. 21.) Having conducted a *de novo* review, pursuant to 28

1

U.S.C. § 636(b)(1), of those parts of the Magistrate Judge's Report and Recommendation to which specific objections have been filed, the Court OVERRULES Plaintiff's Objections, ADOPTS the Magistrate Judge's Report and Recommendation, GRANTS Defendant's Motion for Summary Judgment (ECF No. 18), DENIES Plaintiff's Motion for Summary Judgment (ECF No. 16), and AFFIRMS the findings of the Commissioner.

## I. BACKGROUND

The Magistrate Judge thoroughly set forth the factual and procedural background in his Report and Recommendation, to which no Objection has been raised, and the Court adopts those portions of the Report and Recommendation here. (Report 3-9.)

## II. STANDARD OF REVIEW

Where a party has objected to portions of a Magistrate Judge's Report and Recommendation, the Court conducts a *de novo* review of those portions. Fed. R. Civ. P. 72(b); *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). Only those objections that are specific are entitled to a *de novo* review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* (internal quotation marks and citation omitted). "A non-

specific objection, or one that merely reiterates arguments previously presented, does not adequately identify alleged errors on the part of the magistrate judge and results in a duplication of effort on the part of the district court: "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless." *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Specific objections enable the Court to focus on the particular issues in contention. *Id*. An "objection" that does nothing more than disagree with a magistrate judge's determination, "without explaining the source of the error," is not considered a valid objection. *Id.* Without specific objections, "[t]he functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." *Id*.

## III. ANALYSIS

Plaintiff's sole objection is that the Magistrate Judge erred in finding that the ALJ gave good reasons for discounting the opinions of Plaintiff's treating physician, Dr. Nimmagadda as to Plaintiff's heart and back conditions. The "treating source rule" is a "mandatory procedural protection" that requires an ALJ to give sufficient

3

explanation for disregarding the opinion of a treating physician. *Sawdy v. Comm'r of Soc. Sec.*, 436 F. App'x 551, 555 (6th Cir. 2011). "If an ALJ declines to give controlling weight to such an opinion, the rule still requires the ALJ to fully consider it in accordance with certain factors, *id.* § 404.1527(d)(2)–(6), and to provide 'good reasons' for discounting the opinion, *id.* § 404.1527(d)(2)-i.e., reasons 'sufficiently specific to make clear to any subsequent reviewers the weight . . . [given] to the ... opinion and the reasons for that weight.'" *Id.* (quoting SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)) (alterations and ellipses in original). Consideration of those factors – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source," – provides the "mandatory procedural protection" required when an ALJ does not give a treating source opinion controlling weight. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004).

However, the ALJ need not necessarily address each of these factors in order to provide the procedural safeguards required . *See Webb v. Comm'r of Soc. Sec.*, No. 16-10015, 2017 WL 1164708, at *7 (E.D. Mich. March 29, 2017) ("[T]here is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). *Tilley v. Comm'r*

4

*of Soc. Sec.*, 394 F. App'x. 216, 222 (6th Cir. 2010). In other words, the regulations do not require 'an exhaustive factor-by-factor analysis.' *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x. 802, 804-805 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2), now 20 C.F.R. § 404.1527(c)(2)).").

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration in original). "On the other hand . . . '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent the with other substantial evidence in the case record.'" *Id*. (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *2 (July 2, 1996)). "An administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records." *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428 (6th Cir. 2014) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376, 379–80 (6th Cir. 2013)).

**Objection No. 1: Plaintiff's Heart Condition**

Plaintiff argues that the ALJ failed to properly engage in the "multi-factorial" inquiry envisioned by 20 C.F.R. § 404.1527(c)(2)-(6) in dismissing the opinions of his treating physician, Dr. Nimmagadda, regarding Plaintiff's cardiac-based limitations. But Plaintiff misleadingly quotes in his Objection only the ALJ's concluding statement, which followed and was based upon extensive discussion of substantial record evidence supporting the decision to give Dr. Nimmagadda's opinion less than controlling weight. The following are among the specific relevant record references the ALJ cited in support of his ultimate decision to give Dr. Nimmagadda's opinion less than controlling weight. At a November 2008 visit to Dr. Nimmagadda, Plaintiff had a regular heart rate and blood pressure of 134/90. (ECF No. 12-2, Transcript of Social Security Proceedings, 10/22/15 Decision "Tr. 16," citing Administrative Record "AR" 4F/62). In March 2009, Plaintiff reported only episodes of chest pain which had improved since his previous visit. (*Id*. citing AR 4F/60.) In April, 2009, Plaintiff visited the hospital with chest pain and test results were negative. (*Id*. citing AR 4F/61.) In September, 2009, Plaintiff complained to Dr. Nimmagadda of chest pain but Dr. Nimmagadda noted that Plaintiff had undergone a negative echo stress test the previous day. (*Id*. citing AR 4F/59.) In October, 2010, Dr. Nimmagadda noted that Plaintiff's occasional chest pain resolved with medication

and in January, 2012, despite reporting symptoms, Plaintiff had a regular heart rate and rhythm and blood pressure of 140/80. (*Id*. citing AR 4F/15, 17, 55.) In March, 2013, Dr. Nimmagadda refilled Plaintiff's medications for angina and hypertension and in April, 2013, Plaintiff had angioplasty and on discharge felt well and denied symptoms. (*Id*. citing AR 4F/9, 11 and 1F.) The following month, Dr. Nimmagadda noted that Plaintiff had blood pressure of 124/74 and no remarkable cardiac signs. (*Id*. citing AR 4F/9.) In April 2014, Dr. Nimmagadda noted that Plaintiff had only occasional angina and in March 2015, Dr. Nimmagadda noted that Plaintiff had unremarkable cardiac signs. (Tr. 17 citing AR 4F/1, 8F/1.) Indeed these records, which were among those specifically cited by the ALJ, demonstrate that at the May 2015 visit, Dr. Nimmagadda found all of Plaintiff's chronic conditions, including his cardiac condition, to be either "stable" or "controlled," and specifically found Plaintiff's heart rate and rhythm to be regular, and "encouraged [Plaintiff] to exercise daily." (AR 8F/1-4.)

Plaintiff fails in his Objection to direct the Court to the source of the Magistrate Judge's error regarding the ALJ's conclusions as to Plaintiff's heart condition. First, Plaintiff merely quotes the ALJ's summary paragraph regarding Dr. Nimmagadda's opinion which, as explained above, is based upon the ALJ's detailed citations to the record demonstrating numerous reports and studies supporting his conclusion that Dr.

Nimmagadda's opinion regarding Plaintiff's limitations was not supported by that record. Plaintiff's only citation to the record in support of his Objection is a reference to a statement made by Dr. Mark Rasak, Plaintiff's cardiologist, in Dr. Rasak's October 22, 2013 Cardiology Procedure notes, that "some of the stented material had a significant in-stent debris as well as some calcification from the prior angiograms." (Objs. 3-4, PgID 582-83) (citing Tr. 233). Plaintiff fails to explain the medical significance of this statement, or even to suggest how it might support a finding that Plaintiff's limitations were more severe than the ALJ determined. Moreover, Plaintiff fails to cite the context of that statement in Dr. Rasak's October 22, 2013 Procedure notes, which in fact supports the ALJ's determination. In the quoted statement regarding the "in-stent debris," Dr. Rasak was explaining that the procedure was "somewhat complicated" given Plaintiff's prior stent placements but Dr. Rasak concludes, in that same paragraph, as follows: "At the end of the procedure and [sic] the final result was noted, the patient had an excellent result with 0% residual, TMI 3 flow and no dissection. There was excellent blush distally. The distal disease will be treated medically." (Tr. 233.) Far from demonstrating that the ALJ's determinations were not supported by the record, Dr. Rasak's October 22, 2013 Cardiology Procedure note claiming an "excellent result," supports the ALJ's decision to give Dr. Nimmagadda's opinions as to Plaintiff's limitations little weight.

8

Plaintiff's Objections fail to direct the Court to the source of the Magistrate Judge's error. The Magistrate Judge thoroughly examined the ALJ's record references which supported the ALJ's conclusion that Plaintiff's test results "often were negative." Plaintiff continues to insist in his Objections that "Plaintiff underwent numerous cardiac procedures, and had *10* stents implanted." (Objs. 3, PgID 582) (emphasis in original). But Plaintiff fails to explain how this cardiac treatment history limited Plaintiff's functional abilities to the degree expressed in Dr. Nimmagadda's opinion and fails to direct the Court to any evidence in the record of "positive test results" that would tend to undermine the ALJ's conclusion that Plaintiff's test results "often were negative." As the Magistrate Judge correctly observed, the ALJ recognized that Plaintiff's cardiac impairments were "severe," but the ultimate question is what are Plaintiff's functional abilities in light of those impairments. (*Id*. at 14, PgID 558.)

The ALJ's articulation of reasons for discounting Dr. Nimmagadda's opinions regarding Plaintiff's cardiac conditions are "sufficiently specific to make clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 547. The ALJ was well within the "zone of choice" to "give more weight to the opinions of [an] examining or consultative sources where the treating physician's opinion is not well-supported by

the objective medical records." *Dyer*, 568 F. App'x at 428 (citing *Gayheart*, 710 F.3d 365 at 379–80).

In his Objection, Plaintiff offers only a single out-of-context reference to the record that, when read in context, reveals that Plaintiff actually obtained an "excellent result" from that particular 2013 cardiac procedure, supporting rather than undermining the ALJ's determination as to Dr. Nimmagadda's opinion regarding the degree of Plaintiff's functional limitations. And subsequently, in May 2015, Dr. Nimmagadda found Plaintiff's cardiac condition to be stable and encouraged Plaintiff to exercise daily. Plaintiff has failed to demonstrate that the Magistrate Judge erred in concluding that the ALJ satisfied the "good reasons" requirement for declining to give controlling weight to Dr. Nimmagadda's opinion regarding Plaintiff's functional limitations resulting from his heart condition.

**Objection No. 2 – Plaintiff's Back Condition**

In his second objection, Plaintiff argues that the ALJ "inappropriately" and "selectively" discounted Dr. Nimmagadda's opinion regarding Plaintiff's back condition. Again, Plaintiff misrepresents the ALJ's actual reliance on numerous specific portions of the record by quoting only the ALJ's summary conclusion, which was based upon the ALJ's previously-cited specific citations to Plaintiff's medical records in support of his conclusion. Despite Plaintiff's misrepresentation that the

ALJ considered only a single finding from November 2009, in reaching his conclusions regarding Plaintiff's back condition, the ALJ in fact considered and discussed numerous medical records relating to Plaintiff's back condition, beginning in November 2008 and continuing through at least May 2014, in support of his conclusions regarding the excessiveness of the limitations imposed by Dr. Nimmagadda in her opinion. Based on his review of these treatment notes, in combination with his observations at the hearing regarding Plaintiff's credibility, the ALJ concluded that Plaintiff's "treatment has been routine for his musculoskeletal impairments and although imaging revealed lumbar degeneration, examination signs were largely unremarkable." (Tr. 18 citing AR 4F.) Specifically, the ALJ remarked that in November, 2008, Dr. Nimmagadda noted that Plaintiff had fallen the previous week and had back pain with "radiation to both sides," but had a negative straight-leg raise test. (Tr. 17 citing AR 4F/62.) At that visit Dr. Nimmagadda prescribed anti-inflammatories and a muscle relaxant. In March 2009, Dr. Nimmagadda noted that Plaintiff had an MRI that showed degenerative disc disease and in November 2009, Plaintiff continued to complain of pain "radiating to the legs," but again Dr. Nimmagadda noted negative straight-leg raise test. (Tr. 17 citing AR 4F/58, 60.) In October 2010, Dr. Nimmagadda noted that Plaintiff had "lumbar tenderness" with "mild bilateral paraspinal spasm" and again a negative straight-leg raise test. Plaintiff

was prescribed exercise for his back pain. (Tr. 17 citing AR 4F/54-55.) And in December 2013, the ALJ noted that Plaintiff reported "constant back pain," but Dr. Nimmagadda noted a musculoskeletal exam within normal limits. (Tr. 17 citing AR 4F/3-5.)

The Court rejects Plaintiff's generalized Objection that the ALJ was "selective" with regard to Plaintiff's back problems and failed to give "good reasons" for declining to give controlling weight to Dr. Nimmagadda's opinions as to Plaintiff's limitations resulting from his back condition. Plaintiff's Objection once again fails to direct the Court to the *specific* error he alleges the Magistrate Judge committed, and fails to direct the Court to *any* contrary evidence in Plaintiff's medical record that undermines the ALJ's decision to give Dr. Nimmagadda's opinion regarding Plaintiff's limitations due to his back condition little weight. As the Magistrate Judge correctly observed, the ALJ was "'not required to discuss every medical record in detail.'" (Report 23, PgID 567) (quoting *Jones v. Astrue*, No. 11-cv-228, 2012 WL 2133592, at *9 (S.D. Ohio June 12, 2012)). In this case, the ALJ did support his decision with numerous specific references to Plaintiff's medical records and Plaintiff's Objection directs the Court to nothing in the record to contradict the ALJ's assessment of those treatment records. The Court finds no error in the Magistrate Judge's conclusion that the ALJ satisfied the "good reasons" requirement and that the

ALJ's assessment that Plaintiff had received "routine" treatment for his back condition, which often included Dr. Nimmagadda's recommendation that Plaintiff exercise daily to relieve his symptoms, was supported by substantial evidence.

## IV. CONCLUSION

The Court has conducted a *de novo* review of all of the evidence relating to those portions of the record as to which Plaintiff has filed Objections, including a review of each of the underlying record citations which the ALJ relied upon to support those determinations to which Plaintiff objects. The Court concludes that the Magistrate Judge correctly found that the ALJ satisfied the "good reasons" requirement for declining to give controlling weight to Dr. Nimmagadda's opinions regarding Plaintiff's functional limitations resulting from his heart and back conditions.

For the foregoing reasons, the Court:

1) ADOPTS Magistrate Judge Grand's November 28, 2017 Report and Recommendation (ECF No. 19);

2) OVERRULES Plaintiff's Objections (ECF No. 20);

3) DENIES Plaintiff's Motion for Summary Judgment (ECF No. 16) ;

4) GRANTS the Commissioner's Motion for Summary Judgment (ECF No. 18); and

5) AFFIRMS the findings of the Commissioner.

IT IS SO ORDERED.

                                      s/Paul D. Borman
                                      PAUL D. BORMAN
                                      UNITED STATES DISTRICT JUDGE

Dated: July 16, 2018

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 16, 2018.

                                      s/Deborah Tofil
                                      Case Manager